Howard Sober, Inc., Appellant, *v.* Porterfield, Tax
Commr., Appellee.

[Cite as Howard Sober, Inc., v. Porterfield (1972),
30 Ohio St. 2d 245.]

(No. 71-635—Decided June 14, 1972.)

Messrs. *Dargusch & Day,* for appellant.
Mr. *William J. Brown,* attorney general, and *Mr. Dwight C. Pettay, Jr.,* for appellee.

O'NEILL, C. J. Appellant, Howard Sober, Inc., is engaged in the business of transporting new automobiles from Lansing, Michigan, to dealers in various states, including Ohio. These automobiles are transported by means of a "rig" which is composed of two units—a power unit and a carrying unit. The power unit is a motor vehicle which is capable of movement independently of the carrying unit. The carrying unit is incapable of movement without the power unit, and when both units are "coupled" part of the weight of the carrying unit and part of the weight of its load are transferred to the power unit by means of a "fifth wheel."

Appellant uses two types of rigs in Ohio. Its "six car rig" has four axles—two on the power unit and two on the carrying unit. The other, a "seven car rig," has five axles—three on the power unit and two on the carrying unit.

In determining its highway use tax liability for each mile traveled on a public highway in Ohio, appellant reported each of its six car rigs taxable at the rate of one and one-half cents per mile (R. C. 5728.06(C))[1] and each of its seven car rigs taxable at the rate of two cents per mile

---

[1] "One and one-half cents for each mile traveled * * * by a commercial tractor operated as a part of a commercial tractor combination with four axles,"

(R. C. 5728.06(D)).[2] The Tax Commissioner and the Board of Tax Appeals both found that appellant's rigs were taxable at the rate of two and one-half cents per mile (R. C. 5728.06(E))[3] because they were "operated as part of a commercial tandem." It is this finding which is disputed here.

The board found that the " 'six car rig' is capable of hauling six automobiles—one automobile is carried on top of the 'power unit' and the other five automobiles are carried on the 'carrying unit.' " Likewise, the board also found that the " 'seven car rig' is capable of hauling seven automobiles—one automobile is carried on top of the cab of the power unit and one automobile is carried on the power unit directly behind the cab and over the two rear axles of the power unit and the other five automobiles are carried on the 'carrying unit.' "

While the board found that the power units are capable of carrying automobiles without the carrying unit being attached, it concluded "this is never done in actual operation." However, the board did find that "*the 'power unit' does, in and of itself, carry automobiles.*" (Emphasis added.)

Appellant contends that such finding is erroneous for the reason that "all the evidence showed conclusively that no power unit was ever *used* to transport property wholly on its own structure."

That contention is without merit. The record amply supports the board's finding that "the 'power unit' does, in and of itself, carry automobiles."

Appellant's first witness, its comptroller, testified as follows:

"Q. [Referring to the six car rig] How many cars does this transport?

---

[2]"Two cents for each mile traveled * * * by a commercial tractor operated as a part of a commercial tractor combination with a total of five or more axles."

[3]"Two and one-half cents for each mile traveled * * * by each commercial car or commercial tractor operated as part of a commercial tandem with four or more axles."

248

"A. Six cars in total. Five on the carrying unit, and one car on the power unit.
" * * *

"Q. * * * when you are using this rig, an auto is transported on top of the power unit?
"A. Yes.
" * * *

"Q. [Referring to the seven car rig] * * * how many autos does the power unit on this rig carry?
"A. * * * two units.
" * * *

"A. One on top.
" * * *

"A. The other one is * * * in back of the cab.
" * * *

"Q. * * * how many autos * * * does the carrying unit hold?
"A. * * * five units."

When the power units are originally purchased they have no "provision" for carrying any automobiles. It is only after special "racks" are added that they are equipped to carry the additional automobiles.⁴

Appellant's second witness, the president of the company which manufactures the carrying units and the "racks" which support the additional automobiles, testified as follows:

"Q. [Referring to the six car rig] And the power unit * * * carries how many cars?
"A. One.

"Q. [Referring to the seven car rig] And the power unit * * * carries how many?

⁴"Q. * * * When you get a power unit, does it have one of these structures on the top so that you can carry an extra car?
"A. No * * *.
"Q. * * * the company that manufactures your carrying units [do] they add that to the top of the cab?
"A. This is correct.
"Q. The structure for either one or two cars?
"A. Right."

"A. Two.

"Q. Now, in each case, does the power unit bear the entire weight of the cars it carries?

"A. Yes."

From that testimony, the board concluded that appellant's power units, in and of themselves, carry automobiles, and concluded further that those automobiles are carried wholly on the power unit's own structure. Based on those conclusions, the board found that appellant's power units were properly classified as "commercial cars."

Appellant contends, however, that its power units should be classified as "commercial tractors" as defined by R. C. 5728.01(C). In support of its contention, appellant argues that its power units have no provision for carrying loads independently of the carrying units because the power unit cannot be loaded or unloaded without the carrying unit being attached.

R. C. 5728.01(B) provides:

" 'Commercial car' means any motor vehicle used for transporting property, wholly on its own structure on a public highway."

R. C. 5728.01(C) provides:

" 'Commercial tractor' means any motor vehicle designed and used to propel or draw a trailer or semi-trailer or both * * * *without having any provision for carrying loads independently of such trailer or semi-trailer.* (Emphasis added.)

Preliminary steps to actual transportation are not a determining factor under either R. C. 5728.01(B) or 5728.-01(C). Both sections contemplate actual use and transportation. Assuming, *arguendo,* that the only method of loading or unloading the power units is by means of the carrying units, that does not dispel the fact that, once loaded, the power units are capable, in and of themselves, of transporting the automobiles without the carrying units attached.[5] The significant factor is that whether or not the carry-

---

[5] "Q. Can that power unit, without having a carrying unit attached, be driven down the street with two cars on it?"

ing unit is attached, the power units do have a provision for carrying loads independently of the carrying unit, and such power units are used for transporting property wholly on their own structure.

Nor does R. C. 5728.01(B) require that all the property transported be transported wholly on the power unit's own structure. The only requisite determination is whether the power unit is "used for transporting [any] property, wholly on its own structure." It is irrelevant to that determination that the power unit can only be loaded or unloaded by means of a carrying unit, or that the power unit is always used with the carrying unit attached.

It is because of the unique use which appellant makes of its power units that their legal status is properly characterized as "commercial cars." When the power units are originally purchased they have no provision for carrying automobiles independently of the carrying unit. Such "provision" is purchased and attached to the power units for the express purpose of carrying additional cars. Without it, appellant's rigs are capable of transporting only five automobiles—all on the carrying unit alone. The six car rig becomes such only because of the *addition to the power unit* of a rack above the cab. The seven car rig becomes such only because of the *addition to the power unit* of a rack above the cab and a second rack behind the cab *but resting on its frame.* Accordingly, this court agrees

The Witness:
"Yes.
"* * *

"Q. Would that be an unsafe condition * * *.
"A. No.

"Q. [Referring to the six car rig] * * * could that power unit carry one car on its top down the street without having a carrying unit attached?
"A. Yes.
"* * *

"Q. Either of the power units * * * can carry either one automobile * * * or two automobiles * * * entirely on its own structure without the carrying units attached?
"A. I said before, they can."

with the board that each of appellant's power units is a "commercial car" as defined by R. C. 5728.01(B).

Appellant contends also that the board erred in finding that its carrying units are "trailers," within the meaning of R. C. 5728.01(D), rather than "semi-trailers" as defined by R. C. 5728.01(E).

R. C. 5728.01(D) provides:

" 'Trailer' means everything on wheels which is not self-propelled * * * used for carrying property wholly on its own structure and for being drawn by a motor vehicle on a public highway * * *."

R. C. 5728.01(E) provides:

" 'Semi-trailer' means everything on wheels which is not self-propelled * * * designed and used for carrying property on a public highway when being propelled or drawn *by a commercial tractor* when part of its own weight or the weight of its load, or both, rest upon and is carried by a *commercial tractor*." (Emphasis added.)

Admittedly, the record reveals that part of the weight of the carrying unit and part of the weight of its load rest upon and are carried by appellant's power unit. Were that the only factor to be considered in R. C. 5728.01(E), then appellant's carrying units would be properly classified as semi-trailers. However, by the use of the words "commercial tractor" it is clear that R. C. 5728.01(E) contemplates a carrying unit which is propelled or drawn by a power unit which has no provision for carrying loads independently of such carrying unit. Again, because of the unique method of transporting its cargo, appellant has changed what would have been the legal status of its power units as commercial tractors to commercial cars, and it has likewise changed what would have been the legal status of its carrying units as semi-trailers to trailers. Thus, this court agrees with the board that appellant's carrying units are trailers as defined by R. C. 5728.01(D).

Finding that appellant's power units are commercial cars, and finding further that its carrying units are trailers, this court finds, as did the board, that each of appel-

lant's rigs is a "commercial tandem" as defined by R. C. 5728.01(F).[a]

A commercial tandem is a power unit which is used for transporting property wholly on its own structure and a carrying unit used for transporting property wholly on its own structure. It may also be a power unit which has no provision for carrying loads independently of the carrying unit, and a carrying unit used for carrying property when part of its own weight and/or part of the weight of its load is transferred to the power unit, plus a carrying unit used for carrying property wholly on its own structure.

R. C. 5728.06(E) taxes at the maximum rate "each commercial car or commercial tractor operated as part of a commercial tandem with four or more axles." Simply stated, R. C. 5728.06(E) taxes at the maximum rate those rigs which carry two "loads" which may be distributed between one power unit and one carrying unit or between two carrying units.

Conversely, a "commercial tractor combination" is a power unit which has no provision for carrying loads independently of the carrying unit and a carrying unit used for carrying property when part of its own weight and/or part of the weight of its load is transferred to the power unit.

R. C. 5728.06(B), 5728.06(C) and 5728.06(D) tax, at varying rates, and depending on the number of axles, those rigs which carry only a "single load" as opposed to a commercial tandem which carries "two loads." Clearly then, appellant's rigs cannot be appropriately classified as commercial tractor combinations.

Thus, because appellant's rigs carry two "loads" distributed between the power unit and one carrying unit, and because its rigs have four or more axles, the Tax Commissioner and the board properly assessed appellant under R. C. 5728.06(E).

---

[a] "'Commercial tandem' means any commercial car and trailer or any commercial tractor, semi-trailer, and trailer when fastened together and used as one unit."

Accordingly, the finding of the board that appellant's six and seven car rigs are commercial cars operated as part of a commercial tandem with four or more axles, and taxable at the rate of two and one-half cents per mile for each mile traveled on the public highways in Ohio, is neither unreasonable nor unlawful, and therefore the decision of the board is affirmed.

*Decision affirmed.*

SCHNEIDER, HERBERT, CORRIGAN, STERN, LEACH and BROWN, JJ., concur.